**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alan Stein,<br><br>    Plaintiff,<br><br>vs.<br><br>State of Arizona, et al.,<br><br>    Defendants. | No. CV 09-1505-PHX-MHM<br><br>**ORDER** |

Currently pending before the Court is Defendants' Motion to Dismiss First Amended Complaint (Dkt.#20). Having considered the parties' briefs and having determined that oral argument is unnecessary, the Court issues the following Order.

**I. Introduction**

Plaintiff Stein, a former inmate of the Arizona Department of Corrections (the "DOC"), alleges that he was wrongfully imprisoned for three years under an illegal sentence and sues the State of Arizona, the Current DOC Director (Ryan), the former DOC Director (Schriro), and the "DOC Time Computation Unit Supervisor" (Urena). (Dkt. # 17) Plaintiff's First Amended Complaint sets forth three causes of action: (1) "Negligence, Intentional, Reckless, Gross Negligent [a]nd Recklessly Indifference [sic]," (2) "Intentional and/or Reckless Infliction of Emotional Distress," (3) "Violation of Civil Rights , 42 U.S.C.A. § 1983." (Dkt.#17) The Defendants move to dismiss the First Amended Complaint for failure to state a claim in accordance with Federal Rule of Civil Procedure 12(b)(6).

## II. Analysis

### A. Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "[A]ll well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the nonmoving party." Wyler Summit Partnership v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998). However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Stein incorrectly asserts that "broad global allegations are acceptable" in the initial pleading stage. (Dkt. #21 at 2) "Post-Twombly, plaintiffs face a higher burden of pleading facts, and courts face greater uncertainty in evaluating complaints," and after Iqbal, "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with *nothing more than conclusions.*" al-Kidd v. Ashcroft, 2009 WL 2836448 at *21-23 (9th Cir. 2009) (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

However, "[a] dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle it to relief." Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999).

### B. Judicial Notice

Defendants request the Court to take judicial notice of Stein's sentencing documents and release order in his state criminal case, CR1996-011984 (Maricopa County Superior Court), all of which are referenced in his complaint, and of the Arizona Supreme Court case of State v. Peek, 195 P.3d 641 (Ariz. 2008), cited by Stein. Stein does not object to this request. It is proper to "take judicial notice of matters of public record outside the

pleadings." MGIC Indem. Corp v. Weisman, 803 F.3d 500, 504 (9th Cir. 1986). Moreover, the Ninth Circuit has ruled that when a complaint references prior related litigation, it is proper for a district court to take notice of the "proceedings and determinations" of such litigation without treating the Rule 12(b)(6) motion as one for summary judgment." Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir. 1988). Accordingly, the Court will take judicial notice of Stein's sentencing documents, release order, and Peek (although it may not technically be necessary to judicially notice a published opinion of the Arizona Supreme Court). (Dkt.#14-1, -2)

Based on these documents, and the statements contained in the complaint, it appears that on August 1, 1997, Stein plead guilty to the crime of Attempted Sexual Conduct with a Minor with on offense date between October 15, 1995 and October 26, 1996. (Dkt.#14-2) Sentence was suspended and he was placed "on lifetime probation of the Adult Probation Department of [the Superior] Court." (Dkt.#14-2) Several years passed, and in February 2006, his probation was revoked and he was committed to the DOC for a sentence of ten years. Approximately three years after being incarcerated, in February 2009, he was ordered released based on the November 3, 2008 ruling of the Arizona Supreme Court in State v. Peek, which held that a sentence of lifetime probation was not available for attempted child molestation that was committed between 1994 and 1996. 195 P.3d 641. While lifetime probation was a permitted sentence for this crime for offenses committed prior to 1994 and after 1996, the maximum period of probation for such offenses committed between 1994 and 1996 was five years. Id. Accordingly, in February 2009, based upon the holding in Peek, Stein was granted relief on his post-conviction relief petition by the Arizona Superior Court, which found that lifetime probation had been imposed improperly. No more than five years of probation were authorized by statute at the time of his offense. The Superior Court vacated Stein's subsequent ten-year prison sentence because he had been on probation for more than five years when he was determined to have violated probation in February 2006. To be precise, when Stein was incarcerated in February 2006, it had been approximately nine years since he had originally been put on probation in August 1997. His maximum five-year

period of probation would have expired in February 2001. Accordingly, the Superior Court ordered Stein released from custody.

After being released, Stein sued the State of Arizona and a number of individuals from the DOC, alleging that they should have known that his sentence was illegal and that they should have communicated this information to the Arizona Attorney General's Office, the Maricopa County Attorney, or the Arizona Superior Court so that they could properly vacate his sentence and bring about his immediate release. (Dkt.#17 [Complt.] ¶¶ 45-46) He alleges that the State of Arizona and the individuals are liable for (1) negligence and reckless indifference and (2) intentional and/or reckless infliction of emotional distress. (Dkt.#17) He also argues that the individuals are liable (3) for violating his civil rights under 42 U.S.C.A. § 1983. (Dkt.#17)

### C. State Law Claims

Defendants point to a state statute that provides that DOC employees cannot be sued for a state tort:

> Any and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, shall run only against the state.

A.R.S. § 31-201.01(F). Plaintiff never addresses this statute in his Response (Dkt.#21), and apparently concedes this point. The Arizona Court of Appeals has explained that this provision specifies "who may be named as a defendant in an inmate's lawsuit based on allegations of tortious acts by Department of Corrections ('ADOC') personnel." <u>Tripati v. Ariz. Dept. of Corrections</u>, 199 Ariz. 222, 224, 116 P.3d 783, 785 (App. 2000) (emphasis omitted). Because the statute plainly precludes state law tort claims against DOC employees, the individual Defendants (Ryan, Urena, and Schriro) will be dismissed from these claims.

The following analysis will consider the validity of Stein's claims for negligence and negligent/intentional infliction of emotional distress asserted against the State of Arizona.

**(1) Negligence**

Defendants argue that no negligence claim against the State of Arizona can survive because probable cause existed for Stein's sentence until he was released in the 2009 Release

Order. Courts have consistently held that those executing facially valid court orders are immune from damages for actions taken to execute that order. E.g., Torrez v. Knowlton, 205 Ariz. 550, 73 P.3d 1285 (App. 2003) (where deputy sheriff did not know an arrest warrant had been quashed, he was protected for liability from false arrest because the warrant he was relying on was facially valid). The Torrez Court explained that

> If a warrant, although in fact invalid for any reason, is in regular form and contains every required recital of fact, and if the facts stated, if true, would authorize the court to issue it, and if there is nothing stated or omitted to indicate that the proceedings necessary to its proper issuance have not been duly taken, the person designated to serve it is privileged to arrest under it even though, because of facts not stated in it, the warrant is invalid.

205 Ariz. at 554, 73 P.3d at 1289.

While it is true that Torrez dealt with individuals, not the State itself, an analogous Ninth Circuit case interpreting Arizona law suggests that no cause of action would lie against the state, either. Mundt v. U.S., 611 F.2d 1257 (9th Cir. 1980). In Mundt, a prisoner successfully appealed and obtained a ruling that his sentences were concurrent, not consecutive. At the time the appellate court ruled, he had already been held 78 days beyond the expiration of his then concurrent sentence. Upon his release, he brought a civil action claiming that he had been illegally detained for the 78 days. The Ninth Circuit explained that it "believe[d] that the Supreme Court of Arizona would hold that a confinement effected pursuant to a lower court judgment which is reversed on appeal would also constitute a detention pursuant to a valid legal process." 611 F.2d at 1259.

In addition, to have a valid negligence claim, there must be a violation of a duty. Stein asserts that the DOC's duty is to properly carry out an inmate's sentence. While the DOC is responsible for proper calculation of the sentence, the problem with Stein's sentence was not an error in calculation, but with the *legality* of the underlying probation sentence. Stein claims that his sentence was "invalid on its face," in 1997, when the sentence was issued. However, in 1997, there was no controlling authority to the effect that the probation term for his offense could not exceed five years. This fact was unknown (and unknowable) until Peek was decided until 2008. Until Peek, the DOC therefore had no reason to believe that his sentence was not valid (and thus no duty existed that could have been violated by the

DOC prior to 2008). Stein does not allege any conduct that would support that any duty was violated by the DOC officials.

Stein's argument that <u>Schwichtenberg v. State</u>, 190 Ariz. 574, 951 P.2d 449 (Ariz. 1997) does not require the prisoner to notify the DOC of errors in his sentence is irrelevant. Even assuming for the sake of argument that he is correct, and the prisoner has no duty to draw the attention of the DOC to the sentencing mistake, this does not establish a duty on the part of the DOC to find legal errors in a Judge's orders. The DOC has a duty to ensure that prison sentences are *calculated* correctly; not a duty to personally check (and have a superior legal understanding of ) the statutes and appellate court decisions relied upon by the sentencing judge.

Stein also mistakenly relies upon the following language in <u>State v. Harris</u>, 133 Ariz. 30, 648 P.3d 145 (1982), which he takes out of context: "Whether or not a prisoner is eligible for release on parole or absolute discharge is not for courts to decide – it is within the control of the board of pardons and paroles . . . or the department of corrections." In <u>Harris</u>, the defendant challenged the legality of his 22-year sentence because the sentencing court failed to include a provision that he serve no more than 15 years, as provided in the plea agreement. Given that the sentencing court had no authority to place an outer limit on the defendant's release, the appellate court allowed the defendant the opportunity to withdraw his guilty plea since the plea was based on the mistaken belief that he would be released after 15 years. This is plainly a different situation. The present issue is not one of determining *eligibility* for release (which would be the DOC's job), but the *legality* of a sentence imposed (which is the court's job). Stein's argument assumes that the DOC would have some sort of unique duty or obligation to check and catch any and all *legal* errors committed by the sentencing judge, whether they are based on the court's legal reasoning, the statutory history, or analysis of appellate decisions. Stein does not point to any valid legal authority to support this contention, and the Court finds that Stein's assertion that the DOC had such a duty is not "plausible on its face." <u>Iqbal</u>, 129 S.Ct. at 1949.

Accordingly, Stein's claim for negligence against the State of Arizona will be dismissed.

**(2) Negligent/Intentional Infliction of Emotional Distress**

Defendants point out that Stein has failed to allege any facts that are relevant to either negligent or intentional infliction of emotional distress. (Dkt.#20) Stein never addresses this argument in his response (other than a single sentence, "Intentional and negligent emotional distress claims are covered by [the Amended Complaint]," and essentially concedes this point. (Dkt.#21 at 17)

The tort of negligent infliction of emotional distress appears inapplicable to Stein. "A negligent infliction of emotional distress cause of action requires the plaintiff to: (1) witness an injury to a closely related person, (2) suffer mental anguish manifested as a physical injury, and (3) be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant." Pierce v. Casas Adobes Baptist Church, 782 P.3d 1162, 1165 (Ariz. 1982). Stein has failed to point to any factual allegations in the Complaint that would support such a theory of recovery. Accordingly, to the extent that he seeks recovery for negligent infliction of emotional distress, this claim is dismissed from the Amended Complaint.

Similarly, there appear to be no facts supporting a claim for intentional infliction of emotional distress. The elements of an intentional infliction of emotional distress claim are (1) the conduct by the defendant must be "extreme" and "outrageous," (2) the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct, and (3) severe emotional distress must indeed occur as a result of defendant's conduct. Ford v. Revlon, Inc., 734 P.3d 580, 585 (Ariz. 1987). Whether a defendant's conduct may be regarded as extreme and outrageous is initially examined by the Court as a matter of law. Mintz v. Bell Atlantic Systems Leasing Intern., Inc., 905 P.2d 559, 563 (Ariz. 1995). To survive a motion to dismiss, "a plaintiff must show that the defendant's acts were 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. (internal quotation omitted). It is "[o]nly when reasonable minds could differ in determining whether conduct is sufficiently extreme or outrageous does the issue go to the jury." Id. Here, the State imprisoned Stein pursuant to a facially valid

sentencing order and released him after the Arizona Supreme Court ruled in Peek that his probationary period was limited to five years. This conduct does not amount to conduct that is "beyond all possible bounds of decency" or "atrocious and utterly intolerable in a civilized community." Accordingly, Stein's claim for intentional infliction of emotional distress will similarly be dismissed.

The only remaining claim asserted by Stein is his 42 U.S.C. § 1983 claim against the individual defendants, which is addressed below.

### D. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a constitutional right. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Defendants argue that Stein's § 1983 claim fails for two reasons: (A) qualified immunity and (B) lack of supervisory liability. (Dkt.#20 at 11-15)

**(A) Qualified Immunity**

Defendants argue that Count Three must be dismissed because the conduct of the individuals in question did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quotations omitted). While Defendants admit that detention beyond the termination of a sentence could constitute cruel and unusual punishment in violation of the Eighth Amendment if it is the result of "deliberate indifference" to the prisoner's liberty interest," Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985), Defendants point out that Stein's right to be released did not become "clearly established" until the Arizona Supreme Court decided Peek. To determine whether a right was "clearly established" at the time of the alleged misconduct, the inquiry "must be undertaken in light of the specific context of the case." Saucier v. Katz, 533 U.S. 194, 201 (2001). For a right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Defendants identify an analogous Ninth Circuit case, Cousins v. Lockyer, 568 F.3d 1063 (9th Cir. 2009). In Cousins, a former state prisoner filed a § 1983 suit against several state officials after a provision of the California Sex Offender Registration Act was overturned, invalidating his sentence. Plaintiff alleged that the prison director and warden had a duty to discover when statutes in the Penal Code are invalidated and a duty to inform the trial court that plaintiff's sentence was no longer authorized, and that in breaching these duties, the defendants violated his constitutional rights. Id. at 1067.

The Ninth Circuit found that while the plaintiff has a broad federal constitutional right to be free from wrongful incarceration, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." Id. at 1069. Accordingly, the Court granted qualified immunity because there was "no decisional, statutory, or other legal basis to suggest that a reasonable official standing in the defendants' shoes would have any way of knowing that by failing to personally check all California appellate court decisions for changes in the law, failing to apply these changes to individual inmates statewide, and then failing to contact the appropriate sentencing courts, he or she was violating [plaintiff's] constitutional rights." Id. at 1070-71. The Court noted that related procedures found in the prisons operations manual did not impose constitutional duties. Id.

Stein does not address this case in his Response; he merely asserts generally that it is the job of the DOC personnel was to calculate the sentences correctly and follow procedures to ensure that sentencing was accurate. However, the Court finds Cousins persuasive; no reasonable official would have known that failing to determine the legality of an inmate's underlying violated probation term would violate an inmate's constitutional rights. More particularly, an official would not have known that a term of lifetime probation for the crime of attempted sexual assault with a minor was unlawful as there was no clearly established law so holding until Peek. See Peek, 195 P.3d at 642 ("trial courts have rendered conflicting opinions"). Because Stein fails to sufficiently allege the individual Defendants' participation in clearly established unconstitutional conduct, the Defendants are entitled to qualified immunity.

**(B) Supervisory Liability**

Stein does not allege that the individual Defendants were personally involved in examining or calculating his sentence, but identifies them in their supervisory capacity as follows: Ryan as the DOC Director, Schriro as the former DOC Director, and Urena as the Time Computation Supervisor.

However, as Defendants point out, the United States Supreme Court in Iqbal characterized the term "supervisory liability" as a "misnomer" and explained that "[b]ecause vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S.Ct at 1948-49. A government official is liable only for his or her own misconduct. It is unquestioned that a supervisory official is not liable for the actions of subordinates on a *respondeat superior* theory under 42 U.S.C. § 1983. Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001). A supervisor "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). There are no facts pled that Schriro, Ryan, or Urena directed (or were aware of and failed to prevent) any of the events concerning Stein's sentence.

Stein failed to address this argument in his Response, aside from the following sentence: "Alan [Stein] alleges personally committed 'outrageous' and 'deliberate' acts." (Dkt.#21 at 7 [emphasis in original]) Following this sentence, Stein cites to ¶ 80 of his First Amended Complaint. (Dkt.#21 at 7) Paragraph 80 of Stein's First Amended Complaint reads as follows:

> In so acting, it is alleged that the said certain Director(s), agent(s), servant(s), and/or employee(s) was (were) outrageous as he (they) conducted himself (themselves), and outrageously and deliberately acted, or failed to act, in deliberate disregard of a high degree of probability that emotional distress would be caused by the aforesaid actions, conduct and/or inactions, all of which was reasonably foreseeable.

(Dkt.#17 at 21) Aside from the fact that this paragraph is contained in Count 2 (the intentional/negligent infliction of emotional distress count), this paragraph fails because it contains merely conclusory allegations and is not sufficient to withstand the Iqbal

- 10 -

requirements. Iqbal, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); see also Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

Thus, for the alternative reason that there is no § 1983 supervisory liability, Stein's § 1983 claim fails.

Given that Stein has failed to show that he has any viable claim on the facts presented, the Court will dismiss the Complaint in its entirety with prejudice, even though unserved Defendants remain. See Cousins, 568 F.3d at 1071 (explaining that it was proper for the District Court to dismiss the federal claims against the remaining John/Jane Doe defendants even before they could be identified and impleaded through the discovery process; "Since [plaintiff] has failed to identify, at the appropriate level of specificity, any clearly established constitutional right that had been violated, discovery would be futile.") Here, none of the unnamed defendants can be liable for the state law tort claims either, based on A.R.S. § 31-201.01(F).

**Accordingly,**

**IT IS HEREBY ORDERED** granting Defendants' Motion to Dismiss (Dkt. #17). This case is dismissed with prejudice.

**JUDGMENT ENTERED ACCORDINGLY.**

DATED this 17th day of June, 2010.

_____
Mary H. Murguia
United States District Judge